And we will turn to the last case, 24-2420, I'm sorry, 24-2495, Wade v. Rodriguez. Good morning. It's okay, Mr. Wade, take a second. I'll get that later. Everybody gets a minute to get situated up at the table. And when you do, just make sure you tilt the microphones in, as we've asked everyone to do, because we want to make sure we hear everything you have to say. And just keep your voice up so we can all hear you. Thank you, Your Honor. May it please the Court. My name is Joseph Wade, and I hold the high distinction of a United States citizen. We are here today because the Southern District of New York refuses to construe my complaint as to due justice, even though doing so is required by Rule 8e of the Federal Rules of Civil Procedure. While my original complaint may have struggled on its back, my amended complaint holds all four securely on the ground. Procedurally over the past two years, I've been subject to errors of fact, errors of law, and abuses of discretion, not only unbecoming of constitutional officers, but, in my opinion, deliberate acts of dishonest decorum, justifying investigative scrutiny. Subsequently, as my case began to show teeth, the District Court chose to chase red herrings and white rabbits, conjured from the hat of the defense, instead of engaging with the merits presented on the face of my complaint. A complaint not about a single questionnaire. A complaint about vindication. Vindication of federal rights, judicial review, and due process. Vindication of veritas. The truth is, executive officers at the New York State Department of State have forsaken their constitutional oaths and public duties and replaced them with the principles bound in a little red book. Enforcing, enacting, and endorsing overly broad bureaucratic customs because of the adverse effects that it has on certain individuals. Individuals only identified by the classification of race and gender. A ghastly distribution of undue burden, inimical to the constitutional guarantees of New York State and the United States of America. Now, the District Court claims that, even if my complaint is correct, the walls of sovereign immunity bar me from entering the halls of justice. Well, this is not true. For over 100 years, the 14th Amendment, the Doctrine of Ex Parte Young, and the Doctrine of Incorporation have built many gates through this wall. And the facts of this particular case contour into the shape of a key. The stripping effect of Ex Parte Young allows the District Courts to rule on official state action. Similarly, because the New York State Department of State accepts and directs hundreds of millions of dollars of federal funds, it's subject to Title VI of the Civil Rights Act. 42 U.S. Code Section 2000-D7 explicitly waives state immunity for claims of racial discrimination, demanding that, in this case, New York State enters the District Court as would any other private or public entity. But my problem, counsel, is not immunity, is not any of those things. It's how are you damaged? Because I don't like the standing rules we have, but the rules the Supreme Court has put on us is that people must show that what they were required to do was not only wrong, but hurt them. And so the claim is that, even if you qualified, you wouldn't have gotten the job. And that that is enough to keep us, as much as we might want to decide for you, from doing it. So could you just explain to me what the harm was of a constitutional level? Absolutely. So I'm here pro se as a citizen. The retroactive damages to my company are not part of this case. The single act of discrimination was a concrete and particular act that happens over and over again every time that I apply for a contract. And the New York State Department of State imposes these illegal… No, I understand. I'm willing to assume for the moment that they are illegal. But you must understand that we are bound by Supreme Court decisions which say, unless this has an effect on you in a particular case, we're not allowed to speak. And that's, you know, I may be sympathetic to you, but you've got to help me get over that. Well, I think the stare decisis decision, which the defense has not acknowledged at all, is CROSA and HB Roe. That states the strict scrutiny and narrow tailoring that is required under any racial or gender consideration for any public contract. Okay. Well, Mr. Wade, you've reserved a minute for rebuttal. We've kept you up a minute later, but don't worry about that. We'll still save a minute for you. So what we'll do is we'll hear from Attorney, is it Raduazzo? Raduazzo, yes. Raduazzo. And then after that, Mr. Wade, if you hear anything you would like to respond to, we'll hear from you again. So why don't we hear from you, Mr. Raduazzo. Good morning and may it please this Court. Anthony Raduazzo on behalf of the State Defendants. This Court should affirm the dismissal of Wade's complaint because Wade lacks standing to bring his challenge to the diversity practices questionnaire and sovereign immunity bars all of his claims. First, with regard to standing, Wade can't argue that he has standing based on the denial of the bid on the RFP. That's because that denial was not traceable to the conduct challenged here, because Wade's bid was denied for the independent reason that his proposal failed to meet the minimum scores required for consideration. In fact, Wade's business received the lowest technical score of all applicants, with the exception of one who received a score of zero because they did not submit the technical component of their application. Relatedly, Wade can't claim that he was required to compete for the contract on an unequal footing. This theory of standing, as the Supreme Court has acknowledged, required Wade to show that he was, quote, ready and able to compete for the contract, if not for the alleged discriminatory conduct. But Wade was plainly not ready and able to compete for this contract. As his application materials acknowledged and his complaint acknowledged, he had no relevant experience to provide. You're saying that an ordinary citizen cannot come in and say this that the state is doing discriminates unless it affects him directly. That's correct, Your Honor. And that this does not, and that that's the end of the case. He has to show a direct and particularized harm particular to him. And here, you know, his technical proposal, again, it just scored 17 points. The bare minimum required for consideration was 55 points. That means his proposal was not even considered for this particular contract because it did not meet the bare minimum requirements for consideration. In any event, the questionnaire here did not require Wade to compete on an unequal footing in any way, because it did not request the race, gender, or minority in business, woman business-owned status of any applicant. It did not score, allocate points to any applicant on any of those grounds. And Wade was fully capable of receiving all points under this questionnaire. This court might also affirm on the independent ground that sovereign immunity bars all of Mr. Wade's claims, as Wade does not dispute the amended complaint names each of the defendants solely in their official capacities. And in addition, his amended complaint explicitly seeks only monetary damages from the defendants. Lastly, I'll just briefly note that this court acted well within its discretion in denying Wade's request to amend his complaint a second time, leaving it to amend would be futile in this case because Wade's proposed amendments did not address his lack of standing. And in any event, he was already given an opportunity to amend with full instructions from the district court about the threshold of sovereign immunity issues in this case. I have time remaining if there are no further questions. I ask this court to refer. Thank you. So, Mr. Wade, if there's anything that you heard from your opposing counsel that you would like to respond to, we give you this last minute because you're the appellant, so you get the last word. Thank you. So the issue that the defense keeps bringing up is the fact that I did not fix the inefficiencies of my original complaint. Now, the original complaint was brought under Title VII and the amended complaint was brought under 1983. 1983 specifically says that an injunction is not to be considered until declaratory relief is considered. And what the magistrate judge kept bringing up was that I do not demand prospective injunctive relief. And as I would just like to restate that I am here pro se and that the specific instance of the RFP is attributable to my company, the legal entity of my company. As I'm here, any company that I create and keep applying to these contracts, I will be over and over again under different legal entities subject to the same discriminatory measures. One last thing is that the DPQ is not the only race conscious measure of this application process. There's Form B and Form D, which are explicitly asks about your own racial and gender certification and also asks about your workforce's race and gender by level of employment. Okay. Well, Mr. Wade, thank you very much for coming in today. We thank both sides for your very helpful arguments today. Like every other case that we heard today, we are not deciding it right now, but there will be a written decision forthcoming in the future. And as we say, we take the case under advisement. The court having completed the business for which we have been convened today, we will now stand adjourned.